PEOPLE v SMITH

Docket No. 80297. Submitted August 12, 1986, at Lansing. Decided
March 2, 1987. Leave to appeal denied, 428 Mich —.

Jesse Ray Smith was convicted of murder in the first degree
following a jury trial in Oakland Circuit Court, Frederick C.
Ziem, J. Defendant appealed. The Court of Appeals affirmed. 81
Mich App 190 (1978). In 1984, defendant sought to file a
delayed appeal. The Court of Appeals granted the application
for a delayed appeal. In his delayed appeal, defendant raised
approximately forty issues.

The Court of Appeals *held:*

1. It was error to allow the prosecution to use testimony
concerning prior consistent statements made by the prosecu-
tion's prime witness, an individual who had originally been
charged with the same murder for which defendant was con-
victed. Since the testimony of this witness was critical to the
prosecution's case, the error cannot be said to be harmless.

2. The trial court should have given the jury sua sponte the
cautionary accomplice testimony instruction, since the case was
closely drawn because the trial was basically a credibility
battle between the accomplice, who was testifying for the
prosecution, and the defendant.

4. It was error to permit the police witness to comment on
the credibility of the accomplice who was testifying for the
prosecution.

5. The prosecution's use of the authority and prestige of the

REFERENCES

Am Jur 2d, Criminal Law §§ 166, 836 *et seq.*

Am Jur 2d, Witnesses §§ 641 *et seq.;* 656.

Supreme Court's views as to what courtroom statements made by
prosecuting attorney during criminal trial violate due process or
constitute denial of fair trial. 40 L Ed 2d 886.

Effect of Rule 801(d)(1)(B) of the Federal Rules of Evidence upon the
admissibility of a witness' prior consistent statement. 47 ALR Fed
639.

Propriety of specific jury instructions as to credibility of accom-
plices. 4 ALR3d 351.

prosecutor's office to vouch for the credibility of its witness constituted error.

6. The cumulative effect of these errors mandate reversal and remand for a new trial. Further, it would appear that defendant was denied effective assistance of counsel by both his trial counsel and his appellate counsel in his first appeal.

Reversed and remanded.

1. EVIDENCE — PRIOR CONSISTENT STATEMENT — REHABILITATION OF WITNESSES — HARMLESS ERROR.

Prior consistent statements of a witness generally are not admissible as substantive evidence; however, prior consistent statements may be admissible to rehabilitate a witness who has been impeached on the basis that his testimony was the result of bias by showing that the witness had made prior consistent statements prior to the factors giving rise to the alleged bias or to rehabilitate a witness impeached by a charge of recent fabrication; the erroneous admission of prior consistent statement testimony is not harmless error where the credibility of the witness who made the prior statement is crucial.

2. CRIMINAL LAW — JURY INSTRUCTIONS — ACCOMPLICE TESTIMONY.

It is error to fail to give a cautionary instruction regarding accomplice testimony even in the absence of a request for such an instruction where the issue is closely drawn, for example, where the issue of defendant's guilt comes down to whom to believe, the accomplice or the defendant.

3. WITNESSES — COMMENTS ON CREDIBILITY.

It is improper for a witness to comment or provide an opinion on the credibility of another witness, since matters of credibility are to be determined by the trier of fact.

4. CRIMINAL LAW — PROSECUTORIAL COMMENT.

A prosecutor may argue the credibility of the witnesses and the guilt of the defendant, but may not support the argument with the authority or prestige of the prosecutor's office or the prosecutor's personal knowledge.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Robert F. Davisson,* Assistant Prosecuting Attorney, for the people.

*Hoyt P. Spicer,* for defendant on appeal.

Before: DANHOF, C.J., and SHEPHERD and D. L. HOBSON,* JJ.

PER CURIAM. Defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, on August 6, 1976, following a jury trial. The trial court sentenced defendant to life imprisonment. This Court affirmed defendant's conviction on February 6, 1978. *People v Jesse Smith,* 81 Mich App 190; 265 NW2d 77 (1978). On November 2, 1984, defendant applied for leave to file a delayed appeal. This Court granted leave to appeal on June 18, 1985. The case is now before us again, defendant raising approximately forty issues on appeal. Many are without merit. We find error in four, however, and find that we must reverse and remand for further proceedings.

I

The facts surrounding the shooting were extensively detailed in the opinion from defendant's prior appeal. Only a brief recitation of pertinent facts is necessary to set the stage for our holding.

On Thanksgiving Day, November 27, 1975, Oliver Lee Honchel and Freelin "Ted" Miller were both serving time at the minimum security Michigan Parole Camp near Jackson. They were good friends and began drinking smuggled-in vodka, talking about their home in Kentucky. They decided to escape and drove to Detroit, where they called Oliver's brother, Calvin.

Oliver and Ted needed money, so Calvin picked them up and took them to defendant, who was Calvin's friend, hoping to get some money from defendant. Defendant agreed to help them.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Throughout this time, Oliver and Ted continued to drink and were joined by defendant and Calvin. Defendant, his wife, Ted, Oliver and Calvin decided to drive defendant's Cadillac to Pontiac. As they were leaving, Calvin asked for and received defendant's permission to bring defendant's gun with them. Calvin tucked it in the back of his waistband.

Calvin drove. After they stopped for a six-pack of beer, defendant's wife sat between Calvin and defendant in the front seat. Ted sat behind Calvin, and Oliver sat behind defendant. Calvin testified that, as they drove down I-75, Ted began to get "shaky," fearing they would get caught. Calvin thought Ted said he would "snitch," which made Calvin nervous.

Calvin left the highway and stopped on a dark road. All of the men got out to relieve themselves. As Calvin and defendant stood together, he told defendant that he felt like killing Ted. According to Calvin, he did not actually intend to kill Ted. Defendant's version of the story was that Calvin said: "We got to get rid of this guy," and that defendant rejected Calvin's suggestion that they leave Ted at a bar. The men got back into the car, in the same places as before.

The testimony of the witnesses diverges substantially from this point. Calvin testified that he still had the gun in his waistband. He stated the defendant reached around in front of his wife for the gun. Calvin leaned forward to let defendant take it. Within seconds, he heard an explosion. Calvin saw defendant sitting with the gun in his right hand pointed forward. Defendant then told Calvin to help him get Ted's body out of the car. They dragged the body off to the side of the road and left.

Defendant testified that Calvin initially drove

around on some dirt roads for a few minutes, saying he did not know where he was going. Eventually Calvin stopped the car with the lights off. Defendant turned to look at Calvin and saw him bringing the gun up in his right hand. Defendant grabbed his wife to push her out of the way and lunged for the gun. It went off just as he got his hand on it. Defendant ended up with the gun. They then removed Ted's body from the car and left it by the road.

Defendant's wife testified that the car went down the road for a short distance, then stopped and the lights went out. She was pushed forward in the car and heard a shot. When she looked up, defendant had the gun. She did not see who fired the shot. Defendant and Calvin then removed the body from the car.

Oliver could not remember what happened after they left defendant's apartment because of all the liquor he had drunk. All he remembered was an explosion and feeling Ted fall over on him. He woke up the next morning in a motel with blood on his pants and remembered that Ted had been killed. Two weeks later, Oliver turned himself in.

Defendant was arrested the day after the shooting for breaking eggs on a neighbor's car. The gun was seized from him. Calvin fled to California the day after the shooting. He was arrested there and was extradited to Michigan. He avoided prosecution for murder by agreeing to testify against defendant. The charge against him was reduced to harboring a fugitive, a misdemeanor for which Calvin served ninety days. Defendant was convicted of first-degree murder on August 6, 1976, and sentenced to life imprisonment.

On appeal, defendant's counsel raised two issues. He argued that the trial court abused its discretion in denying defendant's motion for discovery of

a pretrial statement made to the prosecutor by defendant's wife. He also argued that the evidence of premeditation was insufficient. This Court rejected both arguments and affirmed. *Smith, supra.*

In this delayed appeal, defendant raises approximately forty issues, including claims of ineffective assistance of both trial and appellate counsel. We reluctantly find error requiring reversal in four of those issues. We do not discuss defendant's meritless issues. Other issues are discussed only insofar as necessary to avoid error in any retrial.

II

In taking the extraordinary step of reversing defendant's conviction more than nine years after another panel of this Court affirmed it, we note that numerous issues have been raised which that panel had no opportunity to review. Without this serious failure of the original appellate counsel, we believe that panel's holding would have been different. This appeal thus implicates ineffective assistance of both trial and appellate counsel.

An important starting place for discussion is to note that the evidence against defendant was not overwhelming. One of the eyewitnesses was too drunk to remember what happened. The major witness against defendant was Calvin Honchel, whose testimony came after a plea bargain dismissing the first-degree murder charge against him. This highlights the seriousness of errors relating to the jury's ability to assess witness credibility. Moreover, while we have emphasized the four errors requiring reversal, numerous other errors riddled the trial. While harmless by themselves, it is entirely possible that the cumulative effect of these numerous errors may have denied defendant a fair trial.

We recognize the ramifications of our holding. A new trial may be difficult or even impossible after all these years. Our interference with the previous affirmance is justified only by the seriousness of the issues raised in this appeal.

III

During the direct examination of Calvin Honchel, the prosecutor elicited testimony that they had "cut a deal" to get Calvin Honchel to testify at the preliminary examination. The police told Calvin Honchel that, if they thought he was telling the truth at the preliminary examination, they would get the murder charge reduced to harboring a fugitive, a ninety-day misdemeanor, which in fact happened. On cross-examination, defendant's counsel uncovered inconsistencies in Honchel's trial testimony. Defendant's counsel did not question Honchel about any prior statements, but did cross-examine him about the deal he had cut to avoid prosecution for murder. On redirect examination, the prosecutor asked Honchel whether he had ever changed his story at all. Honchel said he had not. On recross-examination, defendant's counsel asked if all of his accounts of the shooting had been consistent and was told that they were.

During the direct examination of Detective Quarles, the prosecutor asked what Calvin Honchel had told the detective at their first interview. Defendant's counsel objected to this line of questioning, and the trial court sustained the objection. The prosecutor then immediately asked Quarles whether Calvin Honchel's prior statement was identical to his trial testimony. Quarles responded that it was. The prosecutor later inquired whether a second statement was taken from Calvin Honchel and whether it was consistent with Calvin

Honchel's original story. Quarles answered that the second statement was consistent with the original story. The prosecutor repeated the consistency in closing argument.

Defendant now claims that the prosecutor improperly used Calvin Honchel's prior statements to bolster Honchel's credibility. Prior consistent statements are not generally admissible as substantive evidence. They are often allowed limited admissibility to support the credibility of a witness who has allegedly been influenced to show that the witness told the same story before the influence was brought to bear or to rebut evidence that a prior inconsistent statement was made. *Brown v Pointer*, 390 Mich 346, 351-352; 212 NW2d 201 (1973). The adoption of the rules of evidence did not abrogate this prior case law. Among the admissible purposes of a prior consistent statement is rehabilitation of a witness impeached by a charge of recent fabrication. *People v Edwards*, 139 Mich App 711, 715; 362 NW2d 775 (1984).

One could argue that Calvin Honchel's testimony was allegedly influenced and that, therefore, the prior consistent statements were permissible to show his credibility. In this case, however, it was the prosecutor who elicited testimony suggesting that his witness' testimony had been influenced. It would seem improper to allow the prosecutor to attack the credibility of his own witness so that he could subsequently present otherwise inadmissible testimony bolstering the witness' credibility. Furthermore, Calvin Honchel's prior consistent statements were not made prior to the influence being brought to bear on him. Defendant maintains, and the prosecutor does not specifically dispute, that none of Honchel's statements were made prior to his arrest. From the moment that Calvin Honchel was charged with murder, there was influence on

him to shift the blame from himself by implicating defendant. This was made evident in Calvin Honchel's own admission that he would do anything possible, including killing police officers, to avoid returning to prison.

Moreover, defendant's counsel never attempted to impeach Calvin Honchel with prior inconsistent statements. Defendant's counsel only impeached Honchel by reference to the internal inconsistencies in his trial testimony and by evidence of prior convictions. Since no one had attempted to impeach the witness with prior inconsistent statements, the second exception to the general rule does not apply. It does not appear that defendant's counsel alleged or insinuated a recent fabrication.

It was thus error for the trial court to allow Quarles to testify that Honchel's prior statements were consistent with each other and identical to his trial testimony. This case was essentially a credibility contest between Honchel and defendant. As the error bears on the credibility of Calvin Honchel, the prosecution's key witness, the error is not harmless and, although standing alone might not mandate reversal at this late date, it must be considered along with the numerous other errors which occurred. See *People v Washington,* 100 Mich App 628, 634; 300 NW2d 347 (1980).

IV

Defendant also argues that the trial court should have given the jury the cautionary accomplice instructions contained in CJI 5:2:02 and 5:2:03. CJI 5:2:02 defines "accomplice" and informs the jurors that they must decide whether the witness was an accomplice. CJI 5:2:03 instructs the jury to examine an accomplice's testimony closely with greater caution and care than the testimony

of ordinary witnesses. No request was made for these instructions. However, our Supreme Court has noted that, if the issue is closely drawn, it may be error requiring reversal to fail to give cautionary accomplice instructions even in the absence of a request. *People v McCoy,* 392 Mich 231, 240; 220 NW2d 456 (1974).

We disagree with the prosecution's argument that Calvin Honchel was not an accomplice in the shooting of Freelin "Ted" Miller. It should be remembered that Honchel was originally charged with Miller's murder. Honchel did not admit to being an accomplice, but there was evidence from which the jury could have concluded that Honchel was in fact an accomplice. Testimony indicated that Honchel brought the gun, drove down dark and sparsely populated roads, and suggested that they should get rid of Miller. There was testimony that Honchel continued to drive on unlit gravel roads, slowed the car down, turned out the lights, and let defendant take the gun from him. The jury could have inferred knowing and voluntary cooperation in the killing. CJI 5:2:02(2).

In *People v Jackson,* 97 Mich App 660, 666; 296 NW2d 135 (1980), this Court held that a case was closely drawn and instructions should have been given sua sponte where there were no independent eyewitnesses and "the question came down to whom to believe, the defendant or the accomplices." Similarly, in *People v Gordon Hall,* 77 Mich App 528, 531; 258 NW2d 547 (1977), this Court held that the case was closely drawn when "the trial became a credibility battle between [the accomplice] and the defendant." See, also, *People v Fredericks,* 125 Mich App 114, 121-122; 335 NW2d 919 (1983). In the case at bar, the only witness who testified that defendant shot the victim was Calvin Honchel. There was no other testimony or

evidence bearing on whether defendant or Calvin Honchel was the one who pulled the trigger. Defendant's wife, for example, did not see who fired the shot, and Oliver Honchel was too drunk. Therefore, the issue was closely drawn and cautionary accomplice instructions should have been given sua sponte. While defendant's counsel made the jury aware of Honchel's motivation to lie and the jury received general instructions on witness credibility, we believe such was insufficient given the credibility contest presented here and the strong emphasis placed by the Supreme Court on accomplice instructions in the face of a close fact question that is nothing more than a credibility contest between defendant and accomplices.

v

Throughout the examination of the police witnesses, the prosecutor elicited opinions that Calvin Honchel had testified truthfully, that Calvin Honchel's story checked out, and that Calvin Honchel did not pull the trigger. Sometimes defendant's counsel objected to this testimony on the ground that it was inadmissible opinion testimony and that it usurped the function of the jury. The prosecutor enhanced this testimony with testimony from Detective Quarles that he had been investigating cases and assessing the credibility of interviewees for sixteen years. Quarles stated that his recommendation that the murder charge against Calvin Honchel be dropped was based on his investigation. Quarles, however, never testified regarding the substance of his investigation.

It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, since matters of credibility are to be determined by the trier of fact. *People v Patri-*

*cia Williams,* 153 Mich App 582, 590; 396 NW2d
805 (1986). Unlike *Williams,* we cannot conclude
that this bolstering of Honchel's testimony was
harmless. Nor do we believe the error was invited
by defendant's counsel when he impeached Hon-
chel by cross-examining him regarding the deal he
made with the prosecutor. It was not improper for
defendant's counsel to impeach Honchel by show-
ing his bias. The prosecutor's response of eliciting
opinions from police witnesses regarding Honchel's
guilt and credibility was improper, however.
Proper impeachment of a witness does not invite
improper rehabilitation.

## VI

During closing argument, the prosecutor effec-
tively testified that the prosecutor's office and the
police generally do a very careful job of interview-
ing witnesses to make sure that they were not
trying the wrong person and that they had done a
very careful job in the case at bar before any deals
were made. The prosecutor commented to the
effect that the investigation checked out Calvin
Honchel's story, that Honchel was charged with
the appropriate crime of harboring a fugitive, and
that the prosecution had gotten the person who
pulled the trigger, which was what the prosecution
was interested in.

A prosecutor may argue the credibility of the
witnesses and the guilt of the defendant, but may
not support the argument with the authority or
prestige of the prosecutor's office or the prose-
cutor's personal knowledge. *People v Clifton Fu-
qua,* 146 Mich App 250, 254; 379 NW2d 442 (1985).
In the case at bar, the evidence allowed for two
basic conclusions: either defendant was guilty of
shooting Miller, or defendant was not guilty be-

cause Calvin Honchel had shot Miller. The prosecutor argued at trial, in effect, that, if there were any chance that Calvin Honchel had shot the victim, the prosecutor's office would not have offered him the plea bargain. The prosecutor backed up his argument with his own statements that the prosecutor's office and the police very carefully investigate murder charges before cutting deals. The sum total of this argument was a combination of those arguments disapproved of in *People v Erb,* 48 Mich App 622, 631; 211 NW2d 51 (1973), and *People v Humphreys,* 24 Mich App 411, 418; 180 NW2d 328 (1970). Given the importance of the credibility contest between Calvin Honchel and defendant, this argument constituted error requiring reversal.

### VII

Each of the above errors might merit reversal standing alone. As will be discussed below, numerous other errors occurred at trial which cumulatively may have denied defendant a fair trial. Our reversal essentially renders moot defendant's effective assistance of counsel claims. Nonetheless, we note that the prevalence of errors at trial would lead us to conclude that defendant has raised meritorious claims of ineffective assistance of both trial and appellate counsel which could also support reversal.

The numerous errors catalogued in this opinion, as well as those not repeated, convince us that defendant's counsel did not perform as well as a lawyer with ordinary training and skill in the criminal law, *People v Garcia,* 398 Mich 250, 266; 247 NW2d 547 (1976), and that defense counsel's performance was deficient under the prevailing norms so as to deprive defendant of a fair trial

with a reliable result, *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant's prior appeal, raising only two issues, stands in stark contrast to this appeal raising forty issues, many of which we have found meritorious. That we are taking the extraordinary step of reversing defendant's conviction more than eight years after it was affirmed by another panel of this Court indicates that defendant was also denied effective assistance of appellate counsel. *Evitts v Lucey,* 469 US 387; 105 S Ct 830; 83 L Ed 2d 821 (1985); *People v Kenneth Johnson,* 144 Mich App 125; 373 NW2d 263 (1985).

### VIII

Three issues, none of which standing alone would require reversal on the facts of this case, nonetheless require brief discussion.

During opening argument, the prosecutor brought out the fact that Calvin Honchel had been allowed to plead guilty to harboring a fugitive and the first-degree murder charge against him was dropped. Also during opening argument, defendant's counsel added that first-degree murder carried a mandatory life sentence and that harboring a fugitive was a ninety-day misdemeanor. These opening arguments were supported by Calvin Honchel's testimony. Defendant's counsel did not object to the prosecutor's opening argument or the questioning of Calvin Honchel in this regard.

Where an accomplice or coconspirator has been granted immunity or other leniency to secure testimony, or has reasonable expectation of such leniency, it is incumbent upon the prosecutor and trial court to disclose such facts to the jury upon defendant's request. *People v Atkins,* 397 Mich 163, 173; 243 NW2d 292 (1976). The general rule,

however, is that the conviction of another person involved in the criminal enterprise is not admissible at defendant's separate trial. If the prosecutor is obliged to disclose any consideration offered to or received by the witness, it can be done without adverting to whether the witness was, if charged, convicted. *People v Lytal,* 415 Mich 603, 612; 329 NW2d 738 (1982). The recent set of plurality opinions in *People v Standifer,* 425 Mich 543; 390 NW2d 632 (1986), however, casts some doubt on the continued vitality of the *Lytal* rule "cursorily adopted in three short paragraphs." 425 Mich 552.

The record does not reflect that defendant's counsel requested disclosure to the jury of the deal Calvin Honchel made for leniency. By disclosing, the prosecutor improperly put before the jury the fact that Calvin Honchel had pled guilty to a charge arising out of the same circumstances for which defendant was being tried. It, however, was apparently defense counsel's strategy from opening argument through closing argument to discredit Calvin Honchel's testimony as having been purchased by the offer of leniency. Not only did defendant's counsel fail to object to the prosecutor's informing the jury of the deal, but defendant's counsel went into the matter himself in opening argument. When the prosecutor objected and argued that the jury should not be informed of the penalty for first-degree murder, defendant's counsel responded that the jury had a right to know the full details about Calvin Honchel's deal. Therefore, we do not find manifest injustice in the prosecutor's error. This holding comports with a proposition in *Standifer, supra,* pp 559-561, adopted by four justices.

Defendant was also impeached by evidence of a California conviction. On cross-examination, the prosecutor asked defendant if he had been con-

victed of possession of a firearm. Defendant replied that he had been convicted of possession of a .22-caliber rifle in California. In closing argument, the prosecutor argued that, if the jury considered Calvin Honchel's felony convictions as weighing against his credibility, the jury should remember that defendant had two felony convictions.

On appeal, defendant claims that his California conviction should not be used against him because it would not be a felony in Michigan, citing *People v Vincent,* 94 Mich App 626; 288 NW2d 670 (1980). In *Vincent, supra,* this Court held that, unless the conduct that makes up the foreign offense can also meet the minimum elements of a Michigan crime admissible under MRE 609, the foreign conviction cannot be used to impeach a defendant in a Michigan court. 94 Mich App 632-633. By "foreign," this Court meant any jurisdiction other than Michigan.

Unfortunately, the record does not clearly reveal for what California crime defendant was convicted. We are unable to find any California statute specifically making it a felony to possess a .22 caliber rifle. *Vincent* was decided after the trial in this case. The Michigan Rules of Evidence were not adopted until two years after trial. Because we are unable to determine the exact crime under discussion, we are unable to review this issue properly or determine *Vincent's* retroactivity. We caution the parties to avoid this problem on any retrial, however. The trial court should also make the appropriate findings on the record before impeachment is allowed by use of any prior convictions.

Defendant has also raised an issue relating to exercise of his right to remain silent. During his case in chief, the prosecutor questioned Detective Quarles regarding the statement defendant made to him. Quarles testified that on December 18, 1975, after reading defendant his rights, he

showed defendant a copy of a warrant charging defendant with Miller's murder. Defendant stated that he knew nothing about the murder. Quarles asked defendant if he knew where Calvin Honchel was. Defendant replied that he had not seen Calvin Honchel in several weeks. Quarles asked defendant what he did on Thanksgiving Day and defendant stated that he stayed home and ate turkey. Quarles testified that defendant then requested an attorney and all questions stopped. Detective Quarles was testifying from a copy of a police report which the prosecutor had given him during direct examination in order to refresh his memory.

In both *People v Gallon,* 121 Mich App 183, 188; 328 NW2d 615 (1982), and *People v Hoshowski,* 108 Mich App 321, 324; 310 NW2d 228 (1981), the prosecutor elicited testimony from police witnesses that the defendants initially answered questions and then requested attorneys. In each case, this Court held it was error for the prosecutor to present testimony that the defendant exercised his right to remain silent after initially answering a few questions. These cases relied extensively on the Supreme Court's opinion in *People v Bobo,* 390 Mich 355, 357; 212 NW2d 190 (1973). The Supreme Court recently held in *People v Collier,* 426 Mich 23, 39; 393 NW2d 346 (1986), that *Bobo* is confined to impeachment for and comment on silence at the time of arrest in the face of accusation. *Collier* involved silence prior to any contact with the police. Nonetheless, we believe the testimony in the instant case was in violation of the important rights granted by *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and the rule of *Gallon* and *Hoshowski* is a sound one. Since the reference to defendant's exercise of his constitutional right was brief and not mentioned in closing

argument, however, we ultimately conclude that it was harmless error. See *People v Jordan,* 105 Mich App 345, 348-349; 306 NW2d 506 (1981). The error should not be repeated at any retrial.

IX

We conclude with a brief recital of other errors which we view as harmless, particularly in view of the lateness of this appeal, but which nonetheless should be avoided on retrial. The prosecutor should not introduce evidence that, before being arrested, defendant ran from a police officer and drew a gun absent a proper foundation for this evidence under the rules of evidence. The prosecutor should also caution Detective Quarles to avoid volunteering the fact that defendant was in jail on a traffic violation when interviewed. It was also completely irrelevant and probably prejudicial to introduce evidence that defendant and his wife were unemployed. *People v Henderson,* 408 Mich 56, 66; 289 NW2d 376 (1980). The prosecutor should avoid impeaching defendant by evidence that he may have previously pulled a gun on Calvin Honchel in a bar.

The prosecutor should avoid implying in closing argument that defendant's counsel met with defendant's wife in an attempt to change her story to conform with defendant's. The prosecutor should avoid closing arguments to the effect that defendant's only defense was that Calvin Honchel actually did it, and that defendant failed to prove this defense, although he presented evidence on it. Burden-shifting arguments such as this, as well as the more subtle argument that defendant's counsel had failed to let the jury know what defendant's evidence would show, are improper. The prosecutor should avoid opinion comments not based on

the record, such as opining that people who carry revolvers do so in their back waistbands or how a person would bleed if shot in the head. We assume that care will be taken to avoid having the jury see defendant in jail clothes or improperly groomed.

Reversed and remanded.