*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICKY DALE JACK,

        Defendant-Appellant.

UNPUBLISHED
December 28, 2023

No. 362171
Ingham Circuit Court
LC No. 18-000946-FH

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant appeals by right his jury conviction of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact with victim less than 13 years of age by defendant 17 years of age or older), for touching the buttock of his then-girlfriend's daughter, DL, who was 11 years old at the time. The jury acquitted defendant of another count of CSC-II which alleged that defendant touched DL's breast during the same transaction. Defendant's arguments consist of two claims of prosecutorial misconduct during rebuttal closing argument, a variety of claims of ineffective assistance of counsel, and a challenge to the imposition of court costs. For the reasons stated in this opinion, we conclude that the prosecution did not commit misconduct, defendant has not satisfied his burden establishing that trial counsel provided ineffective assistance, and we are bound to uphold the imposition of court costs. Therefore, we affirm.

## I. FACTS AND PROCEEDINGS

Defendant and DL's mother were in a relationship. Both DL and her mother expressed unhappiness about that relationship, each describing defendant as "disrespectful." DL testified that defendant summoned her into her mother's room and offered her a phone. When DL reached for the phone, defendant grabbed her buttock, pulled her to him, and kissed her on the lips. DL immediately left and went to the home of her friend and neighbor, TF. TF and DL testified that DL told TF that defendant touched her breast and buttock. During DL's forensic interview, she initially disclosed only that defendant kissed her. After a break in the interview during which DL remained alone in the room for five minutes, she disclosed other details of the incident, including

-1-

that defendant " 'had his head on my boob.' " At trial, when prompted with a statement that she made during the forensic interview, DL added that defendant also touched her breast with his hand. DL's mother testified that DL told her that defendant kissed her on her lips.

The prosecution charged defendant with two counts of CSC-II arising out of the events that were alleged to have occurred on September 23, 2018. This case remained pending for several years because of the pendency of another criminal proceeding which has no relevance to this case beyond the fact that the parties and the trial court expected to try that case first. When a critical witness in defendant's other case became unavailable a few weeks before trial, the trial court scheduled the trial in this case. Defense counsel expressed concerns about preparing for this trial but could articulate no particular barrier to being prepared, and he promised he would be prepared. The parties stipulated to an additional two-week adjournment.

Before trial, the prosecution moved for accommodations for DL's testimony pursuant to MCL 600.2163a, consisting of excluding unnecessary people from the courtroom, seating defendant out of DL's view, conducting questioning from the podium, and having a support person sit with DL. Trial counsel expressed concern that the arrangements be carefully tailored to avoid giving the jury the impression that DL's testimony should be given special weight, but otherwise did not object. DL and her support person were seated while the jury remained out of the courtroom. The trial court closed the courtroom and broadcast the proceedings to another room, and the courtroom was otherwise not arranged differently for DL's testimony.

Defendant's trial counsel initially reserved giving an opening statement. After the prosecution closed its case, and defendant decided not to testify, defense counsel waived making an opening statement and advised the court that the defense would proceed to closing argument. In closing, defense counsel pointed out many discrepancies in the witnesses' testimonies and argued that the prosecution's case lacked merit because the witnesses lacked credibility. Defendant theorized that DL's mother felt "disrespected" and DL adopted the same feelings. Defense counsel indicated that the evidence suggested that they invented the entire event. Defendant argued that something small had been blown out of proportion or possibly DL created the event in her mind and once she stated it she felt that she had to stick with her story. Defendant challenged the veracity of DL's testimony. Defendant pointed out that he was not charged with any crime for kissing DL and that the witnesses' versions of events were irreconcilable. Defendant contended that DL's testimony suggested that defendant had simultaneously held a phone in one hand, touched DL's buttock with another hand, and touched her breast with yet another hand. Defendant asserted that the prosecution failed and could not prove defendant's guilt beyond a reasonable doubt.

In rebuttal, the prosecution disparaged defendant's multiple arguments as desperate. The prosecution highlighted consistencies in the witnesses' statements, the unlikelihood of an 11-year-old masterminding the allegations, and explained why the witnesses had no motive to lie. The prosecution asserted that TF never had any motivation to be involved in making up allegations. The prosecution conceded that TF had been mistaken about some things but argued that defendant's focus on inconsistencies should be rejected. The prosecution stated, "I think she's telling the truth" and went on to explain that TF remembered some things and was simply mistaken on other things but that did not mean she lacked credibility. The prosecution also discussed how DL reluctantly disclosed the events to the forensic interviewer and gave no indication of having

been coached. The prosecution emphasized that DL and her mother chose to participate in the trial even though they had not seen defendant in years and no danger of him returning to their lives existed. The prosecution asked the jury to find defendant guilty.

The jury acquitted defendant of the charge of CSC-II based on defendant's touching DL's breast, but convicted defendant of CSC-II based on defendant's touching DL's buttock. Defendant now appeals.

## II. ANALYSIS

### A. PROSECUTORIAL MISCONDUCT

Defendant contends that some of the prosecution's comments during rebuttal closing argument deprived him of a fair trial. We disagree.

"To preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks, alteration, and citation omitted). Defendant did not object to the prosecution's comments. Defendant, therefore, failed to preserve this issue for appeal. We review unpreserved issues for plain error. *Id*. Under this standard, defendant must establish that a clear or obvious error occurred and that the error affected the outcome of the lower court proceedings. *Id*.

"Claims of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. (quotation marks and citation omitted). "A prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness," although the prosecutor "may argue from the evidence, and reasonable inferences from it, to support a witness's credibility." *Id*. (quotation marks and citation omitted). "The prosecutor also may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id*. at 529-530 (quotation marks and citation omitted). Although a prosecutor's remarks might initially be improper during closing argument, such remarks may be proper in rebuttal to arguments made by the defense during its closing argument. *People v Clark*, 330 Mich App 392, 435; 948 NW2d 604 (2019). A prosecutor cannot tell the jury that the prosecutor's office would not have offered a witness a plea agreement if there had been any chance that the witness committed the murder. *People v Smith*, 158 Mich App 220, 231-232; 405 NW2d 156 (1987). Another example of improper vouching is telling the jury "under the solemnity of [the prosecutor's] official oath" that the prosecutor believed that a witness had lied. *People v Bahoda*, 448 Mich 261, 277 n 26; 531 NW2d 659 (1995). The *Bahoda* Court contrasted the impropriety of such a statement with a prosecutor merely reminding the jury that a witness had agreed to tell the truth. *Id*. at 273-277. Arguing to the jury that a witness is credible based on facts admitted into evidence, however, does not constitute improper vouching, nor does it insinuate that the prosecutor has special knowledge regarding the witness's truthfulness. *People v Gaines*, 306 Mich App 289, 308-309; 856 NW2d 222 (2014).

Defendant argues that the prosecution improperly vouched for TF by stating in rebuttal "I think she's telling the truth." Examination of the record indicates that the prosecution did not

claim any special knowledge regarding TF's truthfulness. Rather, the prosecution responded to defendant's assertion that TF disregarded the truth by emphasizing the big picture notwithstanding the inconsistencies that defendant focused upon in attacking her credibility. *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001). A prosecutor may fairly respond to an attack by the defense on the truthfulness of a witness by arguing that the witness had no motive to lie. *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). "[A]ttacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). The prosecution in this case urged the jury to find TF believable based on record evidence. In response to defendant's attack on the prosecution's case and the credibility of the prosecution's witnesses, the prosecution pointed to the evidence and argued that the witnesses' testimonies had commonalities that established defendant's guilt and that the discrepancies did not undermine their credibility but were attributable to the passage of time and different perspectives, and nothing indicated that DL fabricated her allegations. The record does not support defendant's claim of prosecutorial misconduct regarding the prosecution's remark in rebuttal during closing argument.

Defendant also argues that the prosecution improperly questioned the veracity of defendant's trial counsel and thereby shifted the burden of proof by remarking that defendant relied on around six different arguments which seemed desperate. We disagree.

As explained previously, if the defense accuses the prosecution of being disinterested in the truth, it is not improper for the prosecution to respond by arguing that the defense relied on irrelevant discrepancies. *Watson*, 245 Mich App at 592-593. The prosecution is not obligated to use the "blandest" possible terminology and is not forbidden from engaging in hyperbole. *People v Blevins*, 314 Mich App 339, 355-356; 886 NW2d 456 (2016) (quotation marks and citation omitted). The prosecution may argue to the jury that defendant lacks a cogent defense. Even assuming that the prosecution's comments in this case in rebuttal during closing argument might have been improper had the prosecution made such statements during its initial closing argument, the remarks were made in response to defendant's arguments to rebut defendant's assertion that the prosecution's case lacked merit. As rebuttal argument, the prosecution has greater leeway to respond to the defense's arguments. *Clark*, 330 Mich App at 435; *People v Unger*, 278 Mich App 210, 235-238; 749 NW2d 272 (2008). The prosecution's comments, in this case were not improper under the circumstances. Defendant, therefore, has failed to establish plain error. Accordingly, defendant is not entitled to relief.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he received ineffective assistance of counsel because of a variety of errors or insufficiencies allegedly committed by trial counsel. We disagree.

Defendant did not move for a new trial or evidentiary hearing in the trial court or move for remand on appeal, so this issue is unpreserved and reviewed for mistakes apparent from the record. *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022). "Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; ___ NW2d ___ (2023) (citation omitted). "In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient

-4-

performance, there is a reasonable probability that that outcome would have been different." *Id*. at 488 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). Nevertheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011).

Defendant first argues that his trial counsel was unprepared for trial. The record does not support this contention. Although trial counsel expressed reservations about trying this case on short notice, he failed to articulate any particular impediment to doing so, promised he would be prepared, and ultimately received two additional weeks to prepare. Defendant fails to identify any particular witnesses or evidence that he believes trial counsel should have called or introduced. As such, he has abandoned any claim of ineffectiveness based on a failure to call witnesses or introduce evidence. See *People v Henry (After Remand)*, 305 Mich App 127, 141-142; 854 NW2d 114 (2014); see also *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014).

Further, the record indicates that trial counsel had a strategy based on an expectation that defendant would testify. "A defendant's decision whether to testify on his own behalf is an integral element of trial strategy." *People v Toma*, 462 Mich 281, 304; 613 NW2d 694 (2000). The right to decide whether to testify belongs solely to the defendant, irrespective of trial counsel's wishes. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011); *People v Spaulding*, 322 Mich App 638, 656; 957 NW2d 843 (2020). The retrospective doubtfulness about some of trial counsel's decisions, such as reserving opening statement and later waiving it, or introducing evidence of the floor plan of DL's mother's apartment for no reason that was later explored, is easily explained by defendant's last-moment decision not to testify. Defendant has offered nothing to rebut the presumption that trial counsel's choices were strategic. *Yeager*, 511 Mich at 488.

Defendant also argues that trial counsel's manner of presenting a motion for directed verdict reflected a lack of preparation. We disagree, and, in any event, the defense theory centered on attacking witnesses' credibility. "[I]t is not permissible for a trial court to determine the credibility of witnesses in deciding a motion for a directed verdict of acquittal, no matter how inconsistent or vague that testimony might be." *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). Defendant offers no explanation of how any directed verdict would have been granted in his favor, and counsel is not ineffective for failing to move for a directed verdict if the motion would not have been granted. *People v Riley*, 468 Mich 135, 141-142; 659 NW2d 611 (2003). The record in this case indicates that defense counsel moved for a directed verdict and the trial court explained on the record that it had to view the evidence in a light most favorable to the prosecution and having done so concluded that sufficient evidence existed to sustain a conviction. The court declined to evaluate the credibility of witnesses and weigh their competing credibility issues. The trial court did not err in this regard. Defendant's argument that defense counsel provided ineffective assistance respecting the motion for directed verdict lacks merit.

Defendant argues further that trial counsel provided ineffective assistance by failing to object to hearsay evidence when DL's mother was asked what DL told her about defendant's conduct. We disagree. The prosecution asked DL's mother whether DL told her anything. She responded affirmatively. The prosecution then asked what DL said. DL's mother testified that DL told her that defendant kissed her on the lips. Defendant argues that it was proper to permit the witness to testify that DL told her something, because that contradicted DL's testimony that

she did not discuss the incident with her mother. Defendant argues, however, that no strategic reason existed for failing to object to *what* DL told her mother. Assuming, without deciding, that this was hearsay, "it does not follow that defense counsel provided ineffective assistance by failing to object to its admission." *People v McFarlane*, 325 Mich App 507, 530; 926 NW2d 339 (2018). An objection can call unwanted attention to a statement. See *Bahoda*, 448 Mich at 287 n 54. If defendant had objected, the jury might have inferred that DL told her mother exactly what she told TF: that defendant touched her buttock and breast. Instead, defense counsel used the testimony to defendant's advantage. He made the point to the jury that defendant was not charged with any crime for kissing DL. Further, he pointed out that DL denied having said anything to her mother regarding the molestation which raised credibility issues respecting both DL's and DL's mother's testimonies. Therefore, an objection would have been strategically risky, and, if anything, the testimony helped defendant's case. Defendant has failed to overcome the presumption that defense counsel's decision and conduct served the defense's trial strategy.

Defendant also argues that trial counsel provided ineffective assistance by failing to object to the accommodations made for DL's testimony. We disagree.

If defendant had objected, the trial court would have been obligated to consider alternatives to closing the courtroom, to the use of a support person, and to the other accommodations that were made for DL's testimony. *People v Veach*, ___ Mich ___, ___; 993 NW2d 216 (2023); see also MCL 600.2163a(18). Even if defense counsel had objected, the trial court could still have granted the accommodations. *Id*. Defendant cites only general principles of law regarding constitutional rights that are of grave importance but that would necessarily be implicated *any* time the above accommodations are made. A child witness's inability to see a defendant who is also physically present in the courtroom does not necessarily violate the defendant's constitutional right to confront witnesses. See *People v Rose*, 289 Mich App 499, 510-517; 808 NW2d 301 (2010). The use of a support person for a child witness may be permitted because a "juror can readily accept that a child might need support simply to be in a courtroom to be able to answer questions." *People v Shorter*, 324 Mich App 529, 542; 922 NW2d 628 (2018). That defendant's constitutional rights are in tension with accommodations does not mean that the trial court was obligated to find that the accommodations could not be made.

In this case, before trial, the prosecution moved for special accommodations for DL pursuant to MCL 600.2163a(19) and for use of a support person or animal for a child witness in a CSC-II prosecution as permitted by MCL 600.2163a(4). At the hearing on the motion, defense counsel raised concerns that excluding persons from the courtroom and broadcasting the testimony of the minor witness could bolster the witness's credibility and that defendant had the right to confront witnesses against him. As far as the other accommodations, counsel expressed that such would not present a problem and he acknowledged that defendant would be present and the court's configuration could accommodate the witness's needs so long as nothing drew attention to the arrangement that might create an inference of bolstering the witness's credibility. The prosecution affirmed that defense counsel's concerns could be addressed before the jury entered the courtroom. The trial court reflected upon the matters raised and stated that the issues raised by defense counsel would be addressed before the witness testified. The court found that the statutory requirements set forth in MCL 600.2163a were met, warranting approval of the request for special arrangements. Cognizant of defendant's concerns, the court granted the request with the condition that the parties

work out the means of accomplishing the accommodations in a manner that would not infringe upon defendant's rights or the victim's rights.

The trial court also considered the request for use of a support person or animal for DL. Defense counsel expressed no objection or concern about the use of a support animal but stated concern regarding a support person who could also be a witness and might exert influence on the alleged victim. He reiterated concern for ensuring defendant's constitutional right to a fair trial. The court granted the request to use a support person or animal with appropriate safeguards to protect the fairness of the trial.

MCL 600.2163a authorizes courts to accommodate witnesses under the age of 16 in criminal sexual conduct proceedings. Subpart (4) in relevant part requires a court to permit a witness "who is called upon to testify to have a support person sit with, accompany, or be in close proximity to the witness during his or her testimony." 600.2163a(4). Under Subpart (19), the court may exclude all persons not necessary to the proceeding during a witness's testimony and broadcast the proceedings to the public via closed-circuit television at a separate location, arrange the courtroom with the defendant out of the witness's direct sight, and require all questioning of the witness be performed from a podium. MCL 600.2163a(19).

The record reflects that the parties agreed that all questioning would be performed from the podium and that DL would be seated at the witness stand before the jury entered. Defendant observed that the podium's location would block a witness's direct view of defendant in any event. At trial, defendant confirmed that the arrangements were consistent with the parties' agreement. The courtroom was not changed for DL's testimony, and the support person was located behind DL before the jury entered. The trial proceedings during DL's testimony were broadcast to another room. At defendant's request, the trial court specifically instructed the jury to disregard the support person and to treat DL's testimony the same way it would any other witness's testimony.

Defendant offers no explanation for why the accommodations were not justified in this case. Defendant has not established more than a mere possibility that some or all of the accommodations would not ultimately have been granted. *Harrington*, 562 US at 112. A child witness's inability to see a defendant who is also physically present in the courtroom does not necessarily violate the defendant's right to confront witnesses. See *People v Rose*, 289 Mich App 499, 510-517; 808 NW2d 301 (2010). The use of a support person for an adult might affect the weight the jury would give to the adult's testimony, but a support person for a child witness may be permitted because a "juror can readily accept that a child might need support simply to be in a courtroom to be able to answer questions." *Shorter*, 324 Mich App at 542. We additionally note that the trial court properly instructed the jury to disregard DL's support person. Jurors are presumed to follow their instructions to disregard improper considerations absent extraordinary indications to the contrary. *People v Dennis*, 464 Mich 567, 581-582; 628 NW2d 502 (2001).

Defendant offers nothing more than speculation that the jurors may have been confused by the proceedings during DL's testimony and the presence of the support person. Defendant asserts that defense counsel should have objected to the arrangements but he fails to establish what objection should have been made beyond the objections and concerns raised by his counsel. Nor has he demonstrated that grounds existed for such objections that would have permitted the trial court to sustain them. The record indicates that the trial court gave due consideration to defense

counsel's concerns and addressed them for appropriate compliance with the strictures of 600.2163a(4), (18), and (19). Posing objections would have lacked merit. Trial counsel cannot be held ineffective for failing to make a meritless or futile objection. *Isrow*, 339 Mich App at 532. Defendant has not carried his burden of establishing that trial counsel erred or that a reasonable probability exists that a different outcome would have resulted in the absence of any particular deficiency in trial counsel's performance. Accordingly, he is not entitled to relief.

## C. COURT COSTS

Defendant last argues that the imposition of court costs pursuant to MCL 769.1k(1)(b)(*iii*) was unconstitutional. All of the arguments defendant raises regarding MCL 769.1k(1)(b)(*iii*) recently were considered and rejected by this Court in *People v Johnson*, 336 Mich App 688; 971 NW2d 692 (2021). We recognize that, when defendant filed his brief in this matter, our Supreme Court had granted leave to appeal in *Johnson* and had directed the parties to address the constitutionality of MCL 769.1k(1)(b)(*iii*). See *People v Johnson*, 509 Mich 1094, 1094-1095 (2022). Our Supreme Court, however, later denied leave to appeal. *Johnson*, 511 Mich 1047; 992 NW2d 247 (2023). A denial of leave to appeal has no precedential value. *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 313 n 3; 901 NW2d 577 (2017); see also MCR 7.301(E). However, pursuant to MCR 7.305(H)(3), our Supreme Court's denial of leave renders this Court's published opinion in *Johnson* the final adjudication in that case, and it serves as binding precedent that this Court must follow pursuant to MCR 7.215(J)(1). The imposition of court costs, therefore, was not unconstitutional.

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates